UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
JANE DOE,

                                       Plaintiff,

        -against-

JOSHUA JACKSON, individually,
DEGUENE KEITA, individually,
FATOUMATA KEITA a/k/a NAOMI KEITA,
individually,
JEOFFREY JANVIER, individually and
JOHN DOE, individually,

                                       Defendants.
------------------------------------------------------------------------X

Index No.:
23-cv-4910-ALC

**REPLY MEMORANDUM
OF LAW
IN SUPPORT OF
PLAINTIFF'S MOTION TO
PROCEED
ANONYMOUSLY**

1.    I, Seamus P. Barrett, Esq., an attorney with Derek Smith Law Group, PLLC, attorneys for Plaintiff am fully familiar with the facts of this matter.

2.    In accordance with this Court's order dated 6/29/23, Dkt. #20, Plaintiff hereby submits her Reply to Defendant's opposition to Plaintiff's motion to proceed anonymously.

3.    Plaintiff respectfully submits this affirmation and reply memorandum in support of Plaintiff's request for leave to proceed anonymously as "Jane Doe".

**Introduction**

4.    If there ever was an appropriate case to allow a plaintiff to proceed under the pseudonym "Jane Doe" it would be the case at bar, which contains claims that Defendant Jackson brutally raped and sexually assaulted Plaintiff, then sent a cadre of "goons" (in their own words, See Plaintiff's Declaration in Support ("Pl. Decl."), ¶¶ 3-11, and Exhibits thereto ## 1-2) to begin harassing, threatening, and eventually break into Plaintiff's apartment to assault and rob her (see Pl. Decl. ¶¶ 3-16, and Exhibits 1-5, and Compl. ¶¶ 69-102)

5.    Consistent with Defendant Jackson's reprehensible conduct as described in detail in the Complaint, he now seeks to impermissibly use unquestionably *inadmissible evidence* about

1

Plaintiff's *consensual* sexual conduct, which is *clearly prohibited as evidence under FRE 412 as well as under New York State's Rape Shield Law*, to attempt to "slut"-shame and victim-blame, to further victimize Plaintiff for no other reason than to seek to punish Plaintiff for having the audacity to assert her legal rights against Defendant Jackson and his co-Defendants for their grotesque violations of her rights and her body.

6.      Defendant Jackson's opposition to this motion is primarily based upon Plaintiff's social media presence where she has openly referenced and depicted her sexuality and discussed a *consensual* adult sexual relationship with another professional athlete. This is a far cry from publicizing the brutal rape, sexual assault, home-invasion robbery, threats, and harassment to which Plaintiff was subjected by Defendant Jackson and his co-Defendants.

7.      Aside from any of Defendant Jackson's claimed "reputational" damage, which is clearly of his own making[1], Defendant Jackson's opposition papers fail to articulate any non-speculative undue prejudice he has faced or would face if this Court were to allow Plaintiff to proceed in this case as "Jane Doe", at least certainly not in the pre-trial and discovery phase.

8.      Recently, in a similar civil rape case before this Court[2], *Jane Doe v. Cuba Gooding Jr.*, SDNY Case No: 20-cv-06569, Judge Paul Crotty allowed the plaintiff to proceed through the

---

[1] To date, Plaintiff is unaware of any stories published in the press that have been generated by this case. This lack of press coverage is likely in part because Defendant Jackson is widely regarded among many NBA content creators and writers as one of the "Biggest BUSTS in recent NBA [draft] history". However, there are numerous easy-to-find press articles and YouTube videos published about Defendant Jackson's underwhelming (to put it mildly) professional career (he no longer plays for any professional team), as well as his numerous encounters with law enforcement, including a May 2020 felony arrest in Florida (see e.g. https://www.si.com/nba/2019/05/13/josh-jackson-arrested-felony-charge-rolling-loud-festival-suns) and at least two incidents involving violence against female victims while Defendant Jackson was a member of the University of Kansas Men's Basketball team, one of which includes being questioned along with four other teammates regarding a report of an alcohol-related rape of a minor in the KU men's basketball dorm, and the other involving Defendant Jackson smashing a female student-basketball player's car and threatening her with physical violence (see e.g. https://www.espn.com/mens-college-basketball/story/_/id/18925546/josh-jackson-threatened-beat-women-player).

[2] Similar insofar as that case was against a high-profile actor and involved allegations that he raped the plaintiff. In contrast, the present case also involves allegations of numerous other subsequent threats and crimes perpetrated by Defendant Jackson and his cohorts. Accordingly, many of the arguments made in the *Doe v. Gooding Jr.* case regarding plaintiff's status as "Jane Doe" are reproduced, paraphrased and/or otherwise echoed herein.

pretrial and discovery phases under the pseudonym, Jane Doe, then revisited the issue, only shortly before trial. See index number: 20-cv-06569, Docket ## 63 (Defendant's motion to amend the pleadings to disclose the real names of Plaintiff and any witnesses is DENIED, without prejudice as to its renewal after the close of discovery), 165.

9.  Plaintiff respectfully avers that a similar tact should be taken by the Court in this instance.

10. Also of note, Defendant Jackson spends an inordinate amount of their opposition attempting to persuade this Court that the Plaintiff has "improperly" filed her Complaint as "Jane Doe," while conspicuously failing to articulate what the "proper" way to do so is. That is because there is no specific enumerated manner of filing a lawsuit in Federal Court pseudonymously. Neither the United States Code, the Federal Rules of Civil Procedure nor the Local Rules of this Court articulate the "proper" manner in which to file a lawsuit as "Jane Doe."[3] Indeed, as a Plaintiff-side sexual assault/harassment attorney, the undersigned has filed several federal lawsuits with the Plaintiff named as "Jane Doe," and this is the first time I can recall that any Federal Court has required motion practice *sua sponte* in order to proceed as "Jane Doe."

**THE COURT SHOULD ALLOW PLAINTIFF TO PROCEED PSEUDONYMOUSLY**

11. Defendant contends in his opposition memorandum of law that this Court should not allow Plaintiff to proceed pseudonymously, conclusively asserting that allowing her to do so would "prejudice" Defendant Jackson in this case (ECF #19, at pg. 5.) The main focus of Defendant's opposition as to this seems to be akin to the general desire for transparency and openness in judicial proceedings, and moreover to smear and embarrass Plaintiff in front of this Court because of her "openness about her sexuality" (*Id*. Pg. 7), and her significant social

---

[3] As opposed to the rules for filing as "Jane Doe" in New York State Supreme Court, which require the filing of an order to show cause prior to filing a complaint pseudonymously.

media presence.

12.     Defendants also reference public comments Plaintiff has made in connection with a *consensual* relationship with another professional athlete and make recklessly false and defamatory statements regarding Plaintiff's relationship that resulted in a pregnancy with that athlete, which should be disregarded out of hand, for the same reasons that Rape Shield laws are in place making this type of information inadmissible, and entirely non-probative of any of the claims or possible admissible defenses in this case.

13.     In fact, the only non-speculative prejudicial harm Defendant himself seems to allege is that his counsel was contacted by a reporter regarding this case (*Id*. pg. 16).  Significantly, Defendant Jackson cannot point to any press reports to date regarding this case.

14.     As previously discussed, and will be reiterated below, Plaintiff avers that certain factors weigh heavily in Plaintiff's favor whereas others are either tepidly in Defendant's favor or are neutral. Given the weight of the factors in their aggregate, Plaintiff continuing to proceed under the pseudonym Jane Doe should be allowed.

   **A. Proceeding under a Pseudonym is Justified Because the Plaintiff has a Substantial Privacy Interest Which Outweighs the Presumption of Openness in Judicial Proceedings**

15.     The determination of whether to allow a plaintiff to proceed under a pseudonym "requires the court to use its discretion in balancing plaintiff's privacy interest against the presumption in favor of open trials and against any potential prejudice to defendant." *Anonymous v. Lerner*, 124 A.D.3d 487, 487 (N.Y. App. Div. 1st Dept. 2015) (citations and quotation omitted). The right of the public and press to "[a]ccess may still be respected in keeping with constitutional requirements while sensitive information is restricted in keeping with 'the State's legitimate concern for the well-being' of an individual." *Doe v. Rockefeller Univ.*, No. 950172/2019, 2019 N.Y. Misc. LEXIS 6472, at *2 (N.Y. Sup. Ct. (N.Y. Cnty.) 2019) (quoting *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 606

(1982)). Moreover, while "[i]t is elementary that the primary function of a pleading is to apprise an adverse party of the pleader's claim the same principle does not necessarily apply to a pleader's name." *Doe v. Good Samaritan Hosp.*, 115 N.Y.S.3d 853, 857 (N.Y. Sup. Ct. (Nassau Cnty.) 2019) (citation and quotation omitted). Use of a pseudonym also "impacts far less on the public's right to open proceedings than does the actual closing of a courtroom or the sealing of records." *Id*. at 857-58.

16. As previously noted, the U.S. Court of Appeals for the Second Circuit has identified a "non-exhaustive" list of considerations that a district court should take into account when ruling on a motion to proceed pseudonymously. See *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008).

### i. This Case Involves Matters of a Highly Sensitive and Personal Nature

17. Plaintiff's allegations of sexual assault (rape) are highly sensitive and of an extremely personal nature. See, e.g., *Doe v. Townes*, No. 19-cv-8034, 2020 U.S. Dist. LEXIS 83550, at *3 (S.D.N.Y. May 12, 2020) (allegations of forcible touching and sexual abuse are "highly sensitive and of a personal nature," the court found this factor "weighs in favor of proceeding anonymously"); *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) (finding that plaintiff who alleged she was the victim of a "sexual assault … has very legitimate privacy concerns").

18. Further, "protecting the anonymity of sexual assault victims … can be an important safeguard to ensure that the due process rights of [those victims are] protected." *Doe v. Colgate Univ.*, No. 15-CV-1069, 2016 U.S. Dist. LEXIS 48787, at *6-7 (N.D.N.Y. Apr. 12, 2016). Notably, the Court in *Doe v. Smith*, 1:19-CV-1121 (GLS/DJS), 2019 U.S. Dist. LEXIS 205707 (N.D.N.Y. Nov. 27, 2019) permitted that plaintiff to proceed under a pseudonym after finding that the "case will likely require a detailed discussion of the particular sexual encounter alleged in the complaint" which "weighs in favor of granting Plaintiff's request [to proceed under a pseudonym]." *Id*. at *3. The same should apply here, especially given that Defendant Jackson

avers in his memorandum of law that Plaintiff's claims are "made up" so each of Plaintiff's and Defendant Jackson's versions of what transpired during a period of hours in a hotel room will be pivotal to the trier of fact's determination on the issue of liability.

19. Further to this point, many states in this country, including New York, have enacted laws to protect the anonymity of sexual assault victims. See, e.g., N.Y. Civil Rights Law § 50-b. Upon approving New York's rape shield law, then-Governor Mario Cuomo stated, "rape … and sexual assault victims have unfortunately had to endure a terrible invasion of their physical privacy. They have a right to expect that this violation will not be compounded by a further invasion of their privacy." 1991 McKinney's Sessions Laws of N.Y., at 2211-12 (quoted in *Deborah S. V. Diorio*, 583 N.Y.S.2d 872, 881 (N.Y. City Civ. Ct. 1992)).

### ii. Identification Poses a Further Risk of Retaliatory Harm and Psychological Injury

16. "The risk of psychological injury stemming from identification is a cognizable harm that can serve as a legitimate basis for proceeding anonymously." *Doe v. Weinstein*, 484 F. Supp. 3d 90, 94 (S.D.N.Y. 2020). Forcing Plaintiff to identify herself not only "poses a risk that [she] would be subject to unnecessary ridicule and attention," *Colgate Univ.*, 2016 U.S. Dist. LEXIS 48787, at *3, but also makes physical retaliation a real possibility. See, e.g., *Doe v. Smith*, 105 F. Supp. 2d 40, 43-44 (E.D.N.Y. 1999) (Plaintiff allowed to proceed anonymously when she provided evidence "predicting that revelation of her identity will likely cause psychological and emotional pain so intense that it would threaten her stability, her safety, and even her life.") When evaluating the risks that identification would present, "if disclosure creates risk of harm from third parties, disclosure is disfavored. … A risk of retaliation may be found where there is a history of substantiated prior action directed at plaintiff …" *Townes*, 2020 U.S. Dist. LEXIS 83550, at *4 (citations omitted).

17. Here, Plaintiff has already received death threats (i.e. "[**You**] **finished**" Pl. Decl. ¶ 4 and Exhibit 1), threats of violence (Id.) (some of which have already been acted upon in a

brazen and terrifying home-invasion robbery), threats to smear her name publicly via a celebrity gossip site and criminal online harassment during and after the events that precipitated this lawsuit. Specifically, on February 14, 2022, Plaintiff received numerous threatening text messages from several individuals on behalf of Defendant Jackson. See Pl. Decl., at ¶¶ 3-11 and Exhibits 1-2. Plaintiff's home was broken into and robbed while she was home by co-Defendants Naomi and Deguene Keita, who claimed that they were robbing Plaintiff at Defendant Jackson's behest See Pl. Decl. at ¶¶ 13, 15 and Exhibits 4 & 6 and the Complaint ("Compl.") at ¶¶ 69-102. Plaintiff also received numerous threats of violence and public smearing of her name via text message See Pl. Decl. at ¶¶ 4-11 and Exhibits 1 and 2.

18. Plaintiff posits that the risks of physical retaliation and psychological harm from said threats by Defendant Jackson's cohorts (including from whoever the "they" and the "goons" are referenced in the February 14, 2022 text messages Plaintiff received) and other lackeys and hangers-on of Defendant Jackson as well as random anonymous on-line trolls, such as the ones whose twitter pages Defendant Jackson preposterously cites on page 16 of his opposition memoranda (ECF. # 19) will only increase should her identity be disclosed.

19. The "public sources" Defendant Jackson cites on page 16 of his opposition memoranda who have "come forward" are specious at best, and for all anyone knows, those twitter accounts could be controlled and maintained by Defendant Jackson, his co-defendants, friends, supporters, or anyone else. It is beyond absurd for Defendant Jackson to present posts from virtually anonymous twitter accounts in support of his opposition. In fact, those twitter posts are emblematic of the type of unfounded harassment Plaintiff will very likely be subject to if this Court elects to deny her motion at this point in the case, and thus, if anything, they lend support to her motion to proceed as "Jane Doe."

20. Notably, the present case is unlike the case of *Doe v. Weinstein*, 484 F.Supp. 3d 90 (S.D.N.Y. 2020), in which that plaintiff moved to proceed under a pseudonym (said motion

7

was ultimately denied) due to the defendant's alleged generalized history of "harassing his accusers." The district court reasoned, in part, that speculation as to the possibility of retaliation was insufficient to grant the plaintiff's motion to proceed under a pseudonym. *Id.*, at 96. Here, however, Plaintiff has already faced actual particularized threats and physical assault and robbery as detailed in the Complaint and herein, and provides irrefutable documentary evidence of such in the Exhibits attached to her supporting Declaration (See Pl. Decl. ¶¶ 3-11 and Exhibits 1-5 attached thereto). In addition to Plaintiff's concern about retaliation from the Defendants themselves, she has even greater concern about retaliation from heretofore unknown and unnamed hangers-on, and personal supporters of Defendant Jackson.

21. While Plaintiff is not currently certain of the identity of some of the individuals who attacked, harassed, and threatened her on Defendant Jackson's behalf, she has legitimate concerns that she would be subject to renewed threats should her name be disclosed. See *Doe v. Hobart & William Smith Colls.*, 6:20-CV-06338 EAW, 2021 U.S. Dist. LEXIS 52371, at *7 (W.D.N.Y. 2021) ("the risks of harm from third parties were his identity required to be disclosed has been credibly argued").

22. Additionally, as courts in this Circuit have recognized, it is possible for anyone to "determine whether a given individual is a party to a lawsuit in federal court anywhere in the country by the simplest of computer searches, to access the docket sheet of any such case electronically, and . . . that entire case files will be accessible over the Internet." *Doe v. City of New York*, 201 F.R.D. 100, 102 (S.D.N.Y. 2001). Given the threatening text messages and online harassment she has already received as well as the ease with which the public could access court files in this case, Plaintiff's fears of retaliation from individuals are completely reasonable if her identity is disclosed.

23. Plaintiff also asserts that revealing her true identity would cause her to suffer psychological injury. Specifically, as stated in Plaintiff's Declaration, she believes that such

exposure, if allowed, would cause her to experience trauma and exacerbation of debilitating symptoms that she has suffered as a result of Defendant's actions.

24.     As stated in Plaintiff's sworn Declaration, Plaintiff has suffered significant emotional distress as a result of the rape, sexual assault, harassment and other crimes visited upon her at the hands of Defendant Jackson and his co-Defendants. (Pl. Decl., at ¶¶ 17-18.) She believes that if public disclosure of her true identity were compelled, it would cause her to experience trauma and exacerbation of symptoms she has worked hard to overcome for the past year. (Pl. Decl., at ¶18.) As previously mentioned, she has felt a sadness, sometimes more intense than other times, which has continued in some form since the date of Defendant Jackson's initial attacks to this day with flashbacks of the violent rape and home invasion robbery committed by Defendant Jackson and his co-Defendants. These flashbacks cause her to become very anxious. Maintaining some semblance of privacy and security in this lawsuit would help her cope with her anxiety and fears.

25.     Plaintiff asserts that this particularized attestation as to the psychological harm it would cause her if she were forced to disclose her true identity is compelling, and thus, this Court should allow Plaintiff to continue as "Jane Doe." See *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006) (in allowing a plaintiff to continue under a pseudonym, the court held, in relevant part, "[i]n support of his motion, plaintiff states [in his sworn affidavit] that he… will experience psychological harm if his identity is revealed in this case"); *Doe v. Bloomberg L.P.*, 2021 N.Y. Slip Op 06754, 2021 N.Y. App. Div. LEXIS 6797, at *1 (N.Y. App. Div. 1st Dept. 2021) (court relied upon, inter alia, the plaintiff's sworn affidavit "attesting to the psychological harm it would cause to disclose her name publicly").

      iii.  **<u>Lack of Prejudice to Defendant Jackson</u>**

23.     Defendant would not suffer any prejudice should Plaintiff be allowed to continue proceeding pseudonymously. In fact, Defendant has already acknowledged that he is aware of

9

Plaintiff's true identity, and has been for well over a year and thus, will have an uninhibited opportunity to litigate this matter and cross-examine Plaintiff, regardless of whether Plaintiff's identity is disclosed publicly. See, e.g., *Kolko*, 242 F.R.D. at 198 ("Other than the need to make redactions and take measures not to disclose plaintiff's identity, defendants will not be hampered or inconvenienced merely by Plaintiff's anonymity in court papers. Indeed, defendants already know plaintiff's true identity"); See also *Townes*, 2020 U.S. Dist. LEXIS 83550, at *16 ("Defendant, because he knows Plaintiff's name, is not greatly prejudiced in his ability to conduct discovery."); *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y. 1988) (the court allowed the plaintiff to proceed pseudonymously and reasoned that the defendant will not be harmed because it already knows plaintiff's identity and "it will have full discovery rights as the case progresses, and it will only be barred from using or disclosing the fruits of its discovery for purposes other than the defense of this action."); *Smith*, 2019 U.S. Dist. LEXIS 205707, at *5 ("Defendant knows Plaintiff's identity, and so his ability to conduct discovery will not be impeded, and will only practically be inconvenienced by having to take measures to avoid disclosing Plaintiff's identity publicly").

24. Defendant Jackson's opposition papers, reference Plaintiff's true name at least 88 different times and via the voluminous references to her (inadmissible) social media posts, Defendant Jackson has revealed that he has thoroughly reviewed her social media presence and most assuredly knows her true identity, and is more than capable of conducting thorough discovery with respect to this Plaintiff..

25. The evidence from Plaintiff's social media (albeit inadmissible) proffered by Defendant Jackson in opposition to this motion belies his absurd and far-fetched assertion that he would some how be prejudiced in discovery if Plaintiff was allowed to proceed as "Jane Doe."

26. Defendant Jackson also asserts that if Plaintiff is permitted "to proceed pseudonymously, then other victims of her extortion schemes, as well as other negative

character witnesses, may never be located.[4]" ECF #19, pg. 18.

27. This assertion suggests that Defendant Jackson's true interest in seeking to reveal Plaintiff's identity is to open the floodgates to hopeful public shame and ex-boyfriends or flings and the like coming forward with 'dirt' Defendant Jackson can use in a thinly veiled attempt to chill Plaintiff from continuing this lawsuit (or perhaps worse, for supporters, hangers-on and other individuals Defendant Jackson has co-opted to engage in further future threats and harassment against Plaintiff).

28. Accordingly, Defendant would not be prejudiced by Plaintiff continuing to proceed pseudonymously.

### iv. Plaintiff has kept her Identity Confidential in the Proceedings

30. Plaintiff has kept her identity confidential from the public throughout these proceedings. Specifically, she has made no public statements about these matters and even many of her close family and friends are unaware of the circumstances prompting this lawsuit against the Defendants. Further, as far as Plaintiff is aware, her identity has never been reported in any media outlet with respect to any of the allegations in this lawsuit, which also weighs heavily in favor of allowing her to proceed anonymously. See, e.g. *Smith*, 2019 U.S. Dist. LEXIS 205707, at *5 (granting motion to proceed anonymously because "Plaintiff's anonymity has been maintained thus far" and "Plaintiff's request is not undercut by her identity already having been publicly disclosed."); See also *Doe v. Berg*, 15-cv9787, 2016 U.S. Dist. LEXIS 198309, at *3 (S.D.N.Y. Feb. 10, 2016) (motion was denied because "Plaintiff's identity has not been kept confidential—the New York Post has already revealed her name and reported on her relationship with Defendant in a related state action."); *Shakur*, 164 F.R.D. at 362 (denying

---

[4] For some unknown reason, Defendant Jackson elected to redact this argument in their publicly filed opposition even though it does not reveal Plaintiff's identity. Defendant Jackson likely chose to react this assertion so as to hide this disingenuous position from public scrutiny because it is a transparent and distasteful attempt at victim-blaming the Plaintiff.

motion to proceed under pseudonym because "plaintiff has conceded that the press has known her name for some time")

### iv. There is No Alternative for Protecting Plaintiff's Confidentiality

31. Plaintiff submits that there are no alternative mechanisms for protecting her confidentiality and identity. Plaintiff is unaware of any protective order or confidentiality agreement that would enable Plaintiff to maintain confidentiality.

32. In his opposition, Defendant Jackson makes yet another absurd assertion that if Plaintiff is allowed to proceed under a pseudonym (as victim of a rape) then this Court has some duty to protect Defendant Jackson's identity (as the alleged rapist).

33. To further this position, the opposition states: "[Plaintiff] made no … offer that that would allow both parties to proceed anonymously." Putting aside that is this clearly a constitutionally problematic proposition, in the approximately eight weeks leading up to Plaintiff filing this lawsuit, Plaintiff's counsel reached out to Defendant Jackson's attorney at least 10 separate times via text, email and phone call, all of which were ignored, leaving Plaintiff with no other option than to file her lawsuit.

**Conclusion**

34. When all factors are viewed in the aggregate, Plaintiff argues that the gravamen of weight is in her favor in continuing to proceed pseudonymously, and accordingly, respectfully requests that the Court grant her motion.

Dated: June 19, 2023
      New York, New York

Respectfully submitted,

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Plaintiff*

*/s/ Seamus P. Barrett*

Seamus P. Barrett, Esq.
One Penn Plaza, Suite 4905
New York, NY 10119

(212) 587-0760