UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JANE DOE,<br><br>                                 **Plaintiff,**<br><br>-against-<br><br>JOSHUA JACKSON, DEGUENE KEITA, FATOUMATA KEITA a/k/a NAOMI KEITA, JEOFFREY JANVIER, and LOWELL ULMER<br><br>                                 **Defendant.** | **23-cv-04910 (ALC)**<br><br>**OPINION AND ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Jane Doe brings this action against Defendants Joshua Jackson, Deguene Keita, Fatoumata Keita a/k/a Naomi Keita, Jeoffrey Janvier, and Lowell Ulmer based on violations of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. §§ 1591, 1595, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and various New York state laws. Plaintiff alleges that Defendant Jackson enticed her to come to his hotel room and then raped her. After Plaintiff left Defendant Jackson's room, the Defendants engaged in a pattern of racketeering activity against Plaintiff, including robbery, assault, battery, and harassment.

      To date, Plaintiff has not served Defendants Deguene Keita, Naomi Keita, Janvier, and Ulmer. Defendant Jackson waived service and now moves to dismiss Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons outlined below, Defendant Jackson's motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

I. **Factual Background**

On February 13, 2022, Plaintiff went with an acquaintance, Debbie Torres, to a Super Bowl afterparty that several NBA players, including Defendant Jackson, also attended. ECF No. 52 ("Am. Compl.") ¶ 22. Plaintiff was invited to the party by another NBA player in whom she had a romantic interest. *Id.* ¶ 24. During the afterparty, Plaintiff asked Defendant Jackson to call her phone because she had misplaced it. *Id.* ¶ 26.

After Plaintiff went home, she received text messages in the early morning of February 14, 2022 from Defendant Jackson telling Plaintiff "COME THROUGH" and "I GOT $1500 FOR YOU IF YOU PULL UP." *Id.* ¶¶ 30–31. Plaintiff was under the impression that there was still a party and that party attendees were gathered in Defendant Jackson's hotel room. *Id.* ¶ 32. After arriving at Defendant Jackson's hotel room, Plaintiff realized that there was no one else in the room and that Defendant Jackson was shirtless and wearing only a pair of basketball shorts. *Id.* ¶¶ 41–42. Plaintiff told Defendant Jackson that he should not expect sex. *Id.* ¶ 43. Defendant Jackson told Plaintiff that he used money to help him have sex with girls, to which Plaintiff responded that she would never do that. *Id.* ¶¶ 48–49. Plaintiff then laid on the bed with her back to Defendant Jackson and fell asleep. *Id.* ¶¶ 50–51.

Later, Plaintiff woke up to Defendant Jackson ripping her clothes off, climbing on top of her, and exposing his penis to her, to which she shouted, "NO!" *Id.* ¶¶ 53–55. Despite her efforts to push him away, Defendant Jackson overpowered her as he penetrated her vagina with his penis and raped her. *Id.* ¶ 57. Plaintiff fainted and woke up sometime around 8:00 a.m. *Id.* ¶¶ 59–60. When Plaintiff tried to leave the room, Defendant Jackson climbed back on top of Plaintiff and touched her breasts. *Id.* ¶ 61. Plaintiff broke free and started screaming at

2

Defendant Jackson, who aggressively told Plaintiff to lower her voice or he would call security. *Id.* ¶¶ 62–68. As Plaintiff was getting ready to leave, she heard Defendant Jackson speaking on the phone with someone and saying, "SHE WILL NOT FUCKING LEAVE MY ROOM!" *Id.* ¶ 72.

Plaintiff left the room and, by around 10:03 a.m., she had begun receiving texts from Defendant Janvier accusing her of stealing a watch from Defendant Jackson's room. *Id.* ¶ 76. Plaintiff alleges that one of the Defendants intimidated or threatened Torres—the acquaintance with whom Plaintiff attended the Super Bowl party—into providing Plaintiff's address and apartment number. *Id.* ¶ 79. Plaintiff responded to the texts claiming that she did not know anything about the missing watch. *Id.* ¶ 83. Defendant Janvier continued texting Plaintiff repeatedly asking for the watch, threatening to take further action if she did not return it, and texting Plaintiff "JOSH [JACKSON] IS NOT GONNA LET THIS SHIT GO TRUST ME!" *Id.* ¶ 87.

By around 11:07 a.m., Plaintiff began allegedly receiving texts from other numbers, presumably from Defendants Ulmer, Degeune Keita, or Naomi Keita, who continued to threaten her and texted her address back to her. *Id.* ¶¶ 90–96. At around 2:00 p.m., Plaintiff woke up to Defendants Degeune Keita and Naomi Keita (one of whom appeared to hold a gun) breaking into her apartment through her front door. *Id.* ¶ 100–01. One of the intruders allegedly yelled out that Defendant Jackson had sent them and that they were there to collect "collateral." *Id.* ¶ 104. The intruders then grabbed Plaintiff's cell phone—preventing her from calling for help—and began rounding up Plaintiff's expensive handbags to steal them. *Id*. ¶¶ 105–06. Plaintiff screamed for help and the intruders pulled her into the hallway and elevator. *Id*. ¶¶ 108–10. The intruders then pulled Plaintiff into the lobby and two doormen tackled one of the intruders and

3

pinned them to the floor. *Id*. ¶¶ 111–14. NYPD officers then arrived at the scene and arrested Defendants Degeune Keita and Naomi Keita. *Id.* ¶ 114.

## II.     Procedural Background

On June 12, 2023, Plaintiff filed her Complaint. ECF No. 1. On October 12, 2023, Plaintiff requested additional time to serve Defendants and, on October 13, 2023, the Court granted Plaintiff a 90-day extension. ECF Nos. 35–36. On December 12, 2023, Defendant Jackson waived service. ECF No. 43. On December 18, 2023, Defendant Jackson filed a letter requesting a premotion conference and setting forth the bases for his anticipated motion to dismiss the Complaint. ECF No. 45. On December 28, 2023, Plaintiff responded to the letter. ECF No. 48. On January 18, 2024, the Court granted Defendant Jackson leave to file his motion to dismiss. ECF No. 49.

On March 1, 2024, after Defendant Jackson had filed his motion to dismiss, Plaintiff filed an Amended Complaint and its opposition to the motion to dismiss. ECF Nos. 50, 52–53. On March 5, 2024, Defendant Jackson filed another letter requesting a premotion conference and asked the Court whether he should reply to Plaintiff's opposition or seek a renewed motion to dismiss. On March 16, 2024, Defendant Jackson filed a letter requesting a premotion conference and setting forth the bases for his anticipated motion to dismiss the Amended Complaint. ECF No. 55. On March 21, 2024, the Court granted Defendant leave to file their motion to dismiss the Amended Complaint. ECF No. 58. On April 11, 2024, Defendant Jackson filed his motion. ECF No. 60. On May 9, 2024, Plaintiff filed her opposition. ECF No. 65. On May 28, 2024, Defendant Jackson filed his reply. ECF No. 66.

**STANDARD OF REVIEW**

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading "need not include detailed factual allegations, but must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Corona Realty Holding, LLC v. Town of N. Hempstead*, 382 F. App'x 70, 71 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotations omitted). When considering a motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). However, the incantation of the elements of a cause of action, "supported by mere conclusory statements," is not enough to show plausibility. *Id.* at 72. Instead, "[f]actual allegations must be enough to raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

**DISCUSSION**

Plaintiff alleges federal question jurisdiction because she has filed claims under the TVPA and RICO; she also alleges supplemental jurisdiction over her state law claims. Am. Compl. ¶ 7. The Court first considers Plaintiff's TVPA claim and finds that Plaintiff has plausibly stated a claim. The Court next weighs Plaintiff's state law claims and finds that Plaintiff has properly pleaded all but one claim. The Court then turns to Plaintiff's RICO claim and concludes that Plaintiff abandoned the claim, warranting dismissal.

**I.    Plaintiff's TVPA Claim Survives**

Plaintiff brings her first cause of action against Defendant Jackson under Section 1591 of the TVPA. The TVPA provides that:

> Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce ... recruits, *entices*, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)
>
> *knowing* . . . that means of *force*, threats of *force*, *fraud*, coercion . . ., or any combination of such means will be used to cause the person to engage in a *commercial sex act*, . . . shall be punished . . . .

18 U.S.C. § 1591 (emphasis added). For her claim to survive, Plaintiff must show that Defendant Jackson (1) enticed Plaintiff and (2) by means of force and threats of force (3) caused Plaintiff to engage in a commercial sex act. *See Eckhart v. Fox News Network, LLC*, No. 20-CV-5593, 2021 WL 4124616, at *8–11 (S.D.N.Y. Sept. 9, 2021), *on reconsideration in part*, No. 20-CV-5593, 2022 WL 4579121 (S.D.N.Y. Sept. 29, 2022) (collecting cases).

The archetypical example of sex trafficking includes "prostitution, pornography, sex tourism, and other commercial sexual services." 22 U.S.C § 7101(b)(2); *see also Eckhart, 2021* WL 4124616, at *7 (collecting cases). However, the numerous allegations brought against film producer Harvey Weinstein in recent years have led courts to defer to the plain meaning of the TVPA: "[I]n light of the plain text of the statute, numerous courts in this Circuit—including this one—have also applied the TVPA to cases where a victim claims to have been forced or defrauded into sexual activity with the promise of career advancement." *Id.* (citing *David v. Weinstein Co. LLC*, 431 F. Supp. 3d 290, 299 (S.D.N.Y. 2019); *Geiss v. Weinstein Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019); *Noble v. Weinstein*, 335 F. Supp. 3d 504 (S.D.N.Y. 2018); *Canosa v. Ziff*, 18-CV-4115, 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) (collectively, "the Weinstein cases")).

Defendant Jackson seeks to differentiate the instant case from both the "archetypical" sex trafficking cases and the line of Weinstein cases in this district. Defendant Jackson centers on the commerciality prong under the TVPA, arguing that Plaintiff has not alleged that "anything of value" was exchanged "on account of" forced sex. ECF No. 61 ("Def. Br.") at 10. Defendant Jackson argues that even if he had raped Plaintiff—which he denies—Plaintiff has not alleged that the sex acts were premeditated and commercial in nature. *Id.* at 11.

In turn, Plaintiff argues that she was lured by Plaintiff with the false promises of $1,500 and an opportunity to network with athletes, emphasizing that courts have found a commercial sex act to have occurred even if the "benefit . . . did not materialize." ECF No. 65 ("Pl. Opp.") at 4 (citing *Eckhart*, 2021 WL 4124616, at *9). Indeed, Plaintiff alleges that "Defendant [Jackson's] offer of time spent with a professional athlete was successful in enticing and maintaining Plaintiff in [Defendant Jackson's] hotel room for a short time." Am. Compl. ¶ 134.

In his reply, Defendant Jackson continues to distinguish the facts from the Weinstein cases because here "the alleged promise was not for sex, but instead 'to make an appearance.'" ECF No. 66 ("Def. Reply") at 2. Defendant Jackson argues that Plaintiff conflates the enticement and commercial exchange prongs under the TVPA. But with all inferences drawn in Plaintiff's favor, and considering the TVPA case law in this circuit, Plaintiff has adequately alleged the three elements for a TVPA claim.

    **a. Defendant Jackson Enticed Plaintiff**

"For the purposes of a Section 1591 claim, courts have interpreted the word 'entice' based on its ordinary meaning, which is to attract artfully or adroitly or by arousing hope or desire, and [to] attract or tempt by offering pleasure or advantage." *David*, 431 F. Supp. 3d at 300 (cleaned up) (citing *Noble*, 335 F. Supp. 3d at 517); *see also Ardolf v. Weber*, 332 F.R.D.

467, 474 (S.D.N.Y. 2019) ("[T]he use of the term 'entice' in the TVPA means that the perpetrator attracts the victim by offering something that arouses hope or desire.").

Defendant Jackson argues that Plaintiff has not satisfied this element because the promise was not conditioned on sex, but rather on Plaintiff making an appearance at Defendant Jackson's hotel room. Def. Reply at 2. He also argues that Plaintiff does not claim she was "tricked into having sex" by Defendant Jackson but rather that he raped her after she had fallen asleep. Def. Br. at 11. However, courts in this district have allowed claims based on similar facts. In *Eckhart*, the court found that defendant "lure[d] [the plaintiff] back to his hotel room, [inviting] her to 'further discuss her career opportunities at his hotel.'" *Eckhart*, 2021 WL 4124616, at *8. Immediately after plaintiff arrived at the hotel room, the defendant raped the plaintiff. *See id.* at *3, *9. In *David*, the court found that plaintiff met with Harvey Weinstein on a few occasions on which he dangled the promise of future work, thereby arousing hope and desire in plaintiff. *David*, 431 F. Supp. 3d at 301. In the instant case, too, the Court finds that regardless of whether the promise was for money or an appearance in Defendant Jackson's hotel room, Plaintiff plausibly alleges that she was enticed by Defendant Jackson.

### b. Defendant Jackson Knew Means of Force or Fraud Would Be Used

Plaintiff must also "plausibly allege knowledge, or a modus operandi, associated with [the] 'enticement,' that [Defendant Jackson] enticed Plaintiff with knowledge that means of force or fraud would be used to cause a commercial sex act to take place." *Noble*, 335 F. Supp. 3d at 517–18. "In other words, Plaintiff must allege that [Defendant Jackson] had an awareness or understanding that 'if things go as he has planned, force, fraud or coercion will be employed to cause his victim to engage in a commercial sex transaction.'" *David*, 431 F. Supp. 3d at 301 (quoting *United States v. Todd*, 627 F.3d 329, 334 (9th Cir. 2010)). Plaintiff must also allege

8

that this knowledge existed "at the initial recruitment or enticement stage." *Noble*, 335 F. Supp. 3d at 518.

Plaintiff has plausibly alleged that Defendant Jackson knew that means of force or fraud would be used when he first attempted to entice her. Plaintiff states that "Defendant [Jackson] knew that the promise of time spending with him or the use of his influence and notoriety would entice Plaintiff into his hotel room and knew that once there he was in a position to force the sexual activity he desired." Am. Compl. ¶ 134. Moreover, she alleges that "Defendant [Jackson] actively had no intention of following through with his promise of just time spent together. Instead, he used this ploy as a fraudulent means of obtaining sexual gratification." *Id.* ¶ 137. Most plainly, Plaintiff has alleged that Defendant Jackson used force to cause a sexual act to take place. *See* Am. Compl. ¶ 54 ("Defendant [Jackson] ripped open Plaintiff's clothing, exposed his erect penis and forced himself on top of Plaintiff."); ¶ 57 ("Defendant [Jackson] overpowered Plaintiff and held down both of Plaintiff's hands as he penetrated her vagina with his penis and raped her."); ¶ 61 ("Defendant [Jackson] overpowered Plaintiff and held down both of Plaintiff's hands as he penetrated her vagina with his penis and raped her.").

Further supporting this element is Plaintiff's allegation that "Defendant [Jackson] has engaged in similar sexual assaults of other women in the past, where the women were intoxicated, unable or unwilling to consent to sex, then the [sic] he forcibly raped them, and in at least one case causing the victim to become impregnated." *Id.* ¶ 75. When Plaintiff's principal allegations are "viewed in combination with the allegations that [Defendant Jackson] had engaged in a pattern of doing the same with other women" it is "plausible [to infer] that [Defendant Jackson] knew that force and fraud would be used to cause Plaintiff to engage in a commercial sex act." *See David*, 431 F. Supp. 3d at 301.

9

### c. Plaintiff Engaged in a Commercial Sex Act

Here, Defendant Jackson enticed Plaintiff to visit his hotel room by promising a payment and the "opportunity to network with famous sports stars." Pl. Opp. at 4. Defendant Jackson rests on the argument that the TVPA requires Plaintiff to "allege that Jackson sold her for sex or that there was an exchange of 'anything of value' 'on account of' allegedly forced sex[,]" which he claims Plaintiff failed to do. *See* Def. Br. at 10. Indeed, under the TVPA a "commercial sex act" is defined as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

But "Congress's use of expansive language in defining commercial sex act—using such terms as 'any sex act,' 'anything of value,' 'given to or received by any person'—requires a liberal reading." *Noble*, 335 F. Supp. 3d at 521. "In fact, the sex act itself need not occur to state a cause of action under the TVPA." *David*, 451 F. Supp. 3d. at 303 (citing *United States v. Alvarez*, 601 F. App'x 16, 18 (2d Cir. 2015) ("The [TVPA] criminalizes certain means when they are 'used to cause' an act, and thus is concerned with the means and not with the result.")) "A plaintiff's sex trafficking claim thus survives if she pleads that the defendant enticed her while knowing that he would cause her to engage in a commercial sex act, regardless of whether that act ultimately occurs." *Id.* (citing *United States v. Corley*, 679 F. App'x 1, 7 (2d Cir. 2017) ("[T]he plain meaning of the statute . . . requires only that the defendant 'know' that the victim 'will be caused' to engage in a commercial sex act; the statute does not require that an actual commercial sex act have occurred.").

Moreover, Defendant Jackson's promises qualify as "thing[s] of value" under the TVPA. *See Noble*, 2019 WL 3940125, at *4 ("Indeed, on Defendant's account, the promise of money for a sex act would not constitute a 'thing of value' if the individual soliciting the sex never intended

to pay and acted accordingly. It is hard to square such a reading with the statute's purpose of punishing sex trafficking, which may often involve deceitful actors and false promises. It also runs counter to Congress's intent to cast a wide net by employing the term 'any.'"); *Geiss*, 383 F. Supp. 3d at 168 (holding that "the TVPA extends to enticement of victims by means of fraudulent promises of career advancement, for the purpose of engaging them in consensual or . . . non-consensual sexual activity"); *David*, 431 F. Supp. 3d at 304 (concluding that plaintiff received a "thing of value" from a meeting to discuss a role she ultimately did not receive).

The Court finds that although Defendant Jackson did not explicitly promise something of value in exchange for sex, the cases in this district have not required "an explicit *quid pro quo* in order to establish that a sex act was 'commercial.' Indeed, in none of the Weinstein cases was the defendant accused of offering the plaintiffs movie roles only on the condition that they have sex with him, and the courts in those cases did not find this lack of explicit quid pro quo fatal to the plaintiffs' claim." *See Eckhart*, 2021 WL 4124616, at *9. The Court therefore finds that Plaintiff has met this element, thereby plausibly alleging a TVPA claim.

## II.  Plaintiff's State Law Claims Survive

The Court now turns to Plaintiff's state law claims over which the court may exercise supplemental jurisdiction. Under 28 U.S.C. § 1367, federal courts enjoy "a broad grant of supplemental jurisdiction over other claims within the same case or controversy, as long as the action is one in which the district courts would have original jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005). Where "all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. at 350 n. 7 (1988).

Because Plaintiff's TVPA claim stands, the Court must consider whether Plaintiff has properly pleaded all her state law claims against Defendant Jackson.

### a. Assault and Battery

Plaintiff's second cause of action is for assault and battery. In New York, a "civil 'assault' is the intentional placing of another in apprehension of imminent harmful or offensive contact. The elements of civil 'battery' are (1) bodily contact, which is (2) harmful or offensive in nature, and (3) made with intent." *Biggs v. City of N.Y.*, No. 08-CV-8123, 2010 WL 4628360, at *7 (S.D.N.Y. Nov. 16, 2010) (quoting *Merzon v. Cty. of Suffolk*, 767 F.Supp. 432, 448 (E.D.N.Y. 1991)). To establish a prima facie claim of assault under New York law, a plaintiff must prove "physical conduct placing the plaintiff in imminent apprehension of harmful contact"; to establish a prima facie claim of battery, a plaintiff must prove "that there was bodily contact, that the contact was offensive, and that the defendant intended to make the contact without the plaintiff's consent." *Bastein v. Sotto*, 299 A.D.2d 432, 433, 749 N.Y.S.2d 538 (2d Dep't 2002); *see also Villanueva v. Comparetto*, 180 A.D.2d 627, 629, 580 N.Y.S.2d 30 (2d Dep't 1992) ("[A] plaintiff seeking to establish a civil battery need only prove that the defendant intentionally touched [her] person without . . . her consent."). Plaintiff alleged that Defendant Jackson forcibly assaulted and touched her without consent, thereby satisfying the elements of her civil assault and battery claims.

### b. Intentional Infliction of Emotional Distress

In her third cause of action, Plaintiff alleges intentional infliction of emotional distress ("IIED"). Under New York law, a cause of action for IIED has four elements: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv)

severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993); see also *Johns v. Home Depot USA, Inc.*, No. 03-CV-4522, 2005 WL 545210, at *7 (S.D.N.Y. Mar. 8, 2005), *aff'd sub nom. Johns v. Home Depot USA, Inc.*, 180 F. App'x 190 (2d Cir. 2006) (same). Plaintiff alleges that Defenant Jackson assaulted and raped her in his hotel room which caused her to suffer "severe emotional distress and anguish[.]" Am. Compl. ¶ 168. As a result, the elements of Plaintiff's IIED claim are met and the claim stands.

### c.  Violation of C.P.L.R. § 213-C

In her fourth cause of action, Plaintiff references various statutes under which an action can be brought pursuant to C.P.L.R. § 213-c, which permits civil claims against an individual who could be charged with criminal liability for certain enumerated sexual offenses. *See* N.Y. C.P.L.R. § 213-c. In the Amended Complaint, Plaintiff specifically references two sections of the New York Penal Law: 130.50 (criminal sexual act in the first degree, which deals with unlawful oral and anal sexual conduct) and 130.70 (aggravated sexual abuse in the first degree, which deals with insertion of foreign objects into the vagina, urethra, penis, rectum, or anus of another person causing physical injury). Am. Compl. ¶¶ 153–54; *see also* N.Y. Penal Law § 130.50, 130.70.

Plaintiff then notes the enumerated sexual offenses under N.Y. C.P.L.R. § 213-c, which reference these sections, as well as section 130.35 (rape). Am. Compl. ¶ 155; *see also* N.Y. Penal Law § 130.35. Under New York Penal Law Section 130.35, "[a] person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person . . . [w]ho is incapable of consent by reason of being physically helpless[.]" N.Y. Penal Law § 130.35.

Here, Plaintiff plainly alleges that she woke up to Defendant Jackson raping her. The Court thus concludes that the rape claim stands. On the other hand, the Amended Complaint is

bereft of any factual allegations to give rise to civil liability under sections 130.50 and 130.70. Plaintiff alleges neither any oral or anal sexual conduct by Defendant Jackson, nor his insertion of any foreign object into her body.[1]  Accordingly, the Court grants (without prejudice) Defendant's motion to dismiss the cause of action to the extent Plaintiff relies on a theory of aggravated sexual abuse in the first degree or of a criminal sexual act in the first degree.

### d. Violation of the New York Gender Motivated Violence Protection Act

As a fifth cause of action, Plaintiff alleges violations of the New York Gender Motivated Violence Protection Act ("GMVPA").  The GMVPA provides a cause of action for "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender."  N.Y.C. Admin. Code § 10-1104. The GMVPA defines a "crime of violence motivated by gender" as "a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender."  *Id.* § 10-1103.  A "crime of violence," in turn, is defined as

> [A]n act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

*Id.*  To state a claim under the GMVPA, Plaintiff must show that "(1) the alleged act constitutes a misdemeanor or felony against the person; (2) that was perpetrated because of plaintiff's gender; (3) in part because of animus against plaintiff's gender; and (4) resulted in injury."  *Baldwin v. TMPL Lexington LLC*, No. 23-CV-9899, 2024 WL 3862150, at *12 (S.D.N.Y. Aug. 19, 2024).

---

[1] For the purposes of applying Section 130.70 of the New York Penal Law, the Court considers that any foreign object that was inserted must be a detached, inanimate object.  *See People v. Peet*, 64 N.Y.2d 914, 915 (1985) (affirming appellate court's conclusion that a defendant's finger did not constitute a foreign object in part because the terminology used in the statute "connotes something inanimate, detached and separate from any other structure").

14

Defendant Jackson complains that "[P]laintiff's claim for gender-motivated violence (count 5) does not specify the allegedly discriminatory conduct at issue." Def. Br. at 18. But for the reasons detailed above, the Court concludes that Plaintiff adequately pleaded that Defendant Jackson committed rape, an archetypical crime of gender-motivated violence. *See Baldwin*, 2024 WL 3862150, at *13 ("[A]llegations of rape and sexual assault state a claim under the GMVPA because '[m]alice or ill will based on gender is apparent from the alleged commission of the act itself.'") (quoting *Breest v. Haggis*, 180 A.D.3d 83, 94 (1st Dep't 2019)); *see also Doe v. Gooding*, No. 20-CV-6569, 2021 WL 5991819, at *5 (S.D.N.Y. July 29, 2021) (granting default judgment to plaintiff on GMVPA claim based on rape).

Gender-based animus is also inferred by Defendant Jackson's alleged commission of rape. *See Breest*, 180 A.D.3d at 94 ("Without consent, sexual acts such as [rape or sexual assault] are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. . . . Animus inheres where consent is absent."). Additionally, Plaintiff's allegations of emotional distress are sufficient to plead injury in the GMVPA context. *See Doe v. Olive Leaves, Inc.*, No. 18-CV-5734, 2024 WL 3048373, at *11 (E.D.N.Y. Feb. 16, 2024) (complaint pled injury under the GMVPA in alleging emotional distress). The GMVPA claim as to Defendant Jackson therefore survives.

### e. Sexual Assault and Sexual Abuse

Last, the Court considers Plaintiff's sixth cause of action, titled simply "Sexual Assault/Sexual Abuse." In opposing this cause of action, Defendant Jackson asks the Court to dismiss these claims by arguing that they "would be duplicate rather than permissible alternative claims under Fed. R. Civ. P. 8(d) and would 'rise and fall together.'") Def. Br. at 18. (citing *Doe v. Indyke*, 465 F. Supp. 3d 452, 459 (S.D.N.Y. 2020) (dismissing sexual assault claim as

duplicative of battery claim). In response, Plaintiff argues that "[t]he second claim for assault/battery and the third claim for intentional infliction of emotional distress do not contain any sexual component, thus making them non-duplicative since the plaintiff could prevail by proving conduct not involving unlawful sexual contact. According [sic] the claims are alternative and not duplicative." Pl. Opp. at 8.

The case finds that dismissal of any claim as duplicative is premature at this stage. While a sexual assault or sexual abuse common law claim appears to arise from Count Four (rape under N.Y. C.P.L.R. § 213-C), the Court declines to dismiss the claim at the motion to dismiss stage, finding "no basis to force [P]laintiff to elect one theory of recovery over the other at this time." *U.S. Network Servs., Inc. v. Frontier Comm'ns of the W., Inc.*, 115 F. Supp. 2d 353, 358 (W.D.N.Y. 2000) (declining to dismiss the plaintiff's breach of warranty claim as duplicative of the breach of contract claim even though the plaintiff "clearly cannot obtain duplicative damage awards"); *see also Roelcke v. Zip Aviation, LCC*, No. 15-CV-6284, 2018 WL 1792374, at *9, 13–14 (S.D.N.Y. Mar. 26, 2018) (allowing a claim under GMVPA and a claim under N.Y. C.P.L.R. § 213-C for rape and sexual abuse against the same defendant to proceed at the motion to dismiss stage).

### III.   Plaintiff's RICO Claim is Dismissed

The Court next considers whether Plaintiff's RICO claim against Defendant Jackson can be sustained and concludes that it cannot. Defendant Jackson argued in his opening that Plaintiff failed to state a claim under RICO "because she did she did not adequately allege, inter alia: (1) the existence of an 'enterprise,' which must be pled through facts showing common purpose and ongoing organization among the defendants; (2) a "pattern" of racketeering activities, characterized by at least two predicate acts posing a threat of continued criminal activity; or (3)

16

facts supporting a RICO conspiracy." Def. Reply at 1 (citing Def. Br. at 11–15). However, Plaintiff did not respond to any of Defendant Jackson's arguments against the RICO claim. Therefore, the Court concludes that Plaintiff has abandoned her RICO claim and dismisses the RICO action without prejudice. *See Fantozzi v. City of New York*, 343 F.R.D. 19, 32 (S.D.N.Y. 2022) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (cleaned up); *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim.").

### IV.   Leave to Amend

Lastly, the Court grants Plaintiff leave to file a Second Amended Complaint. While Plaintiff has already amended her Complaint once, Plaintiff could presumably plead facts that cure the Amended Complaint's defects. Because this case "is still in its infancy, there would be minimal prejudice to Defendant" in granting leave to amend. *Morales v. Kimberly-Clark Corp.*, No. 18-CV-7401, 2020 WL 2766050, at *10 (S.D.N.Y. May 27, 2020). Moreover, Plaintiff should amend only if she is able to rectify the pleading deficiencies outlined in the Opinion and Order. Plaintiff is cautioned that, absent good cause shown, further leave to amend will not be granted.

## CONCLUSION

For the foregoing reasons, Defendant Jackson's motion to dismiss the Amended Complaint is GRANTED in part and DENIED in part. The Court grants Plaintiff leave to file a

Second Amended Complaint and ORDERS Plaintiff to file the Second Amended Complaint in thirty (30) days.

**SO ORDERED.**

**Dated:**     **New York, New York**
               **March 10, 2025**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**